Frederick M. Marshall, J.
The petitioners are narcotic addicts certified to the custody of the New York State Narcotic Addiction Control Commission (NACC). Lynch is presently confined to resident status at NACC Hasten Park Rehabilitation. Center, after having his aftercare status revoked on January 5, 1973. Lynch, however, has withdrawn his application for relief. Pannell is now on aftercare status and at liberty. Young has been returned to resident -status after having his aftercare status revoked. The relief sought from this court is: (1) a preliminary injunction to prevent NACC from continuing its present policy of revoking petitioners’ aftercare status without a hearing and without benefit of counsel; (2) an order declaring NACO’s present policy unconstitutional under the Fifth, Eighth and *224 Fourteenth Amendments to the United States Constitution and section 6 of article I of the New York Constitution.
The issues raised by petitioners are not without precedence before this court. (See People ex rel. Murray v. Morrow, 60 Misc 2d 1001 [1969].) In Murray, the court denied relief, holding that there was no basis for applying constitutional guarantees of due process to an administrative act of NACC in changing the status of a certified addict from that of an aftercare addict to a resident addict.
It is no secret among informed sources that despite untold millions of dollars and the diligent efforts of its members, NACC, an already overburdened agency, has not achieved any great degree of identifiable success. To add to NACC’s already diffifult job yet another quasi-judicial function cannot but hinder their treatment processes.
However, in light of the Court of Appeals’ recent decision in People ex rel. Menechino v. Warden, Green Haven State Prison (27 N Y 2d 376 [1971]), the Murray decision can no longer be considered a valid constitutional interpretation. Menechino holds that a parolee has a constitutional right to be heard and to be represented by a lawyer in parole revocation hearings. The court found that where the revocation of parole results in the deprivation of liberty “ the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his ease * * *„ is apparent.” (Mempa v. Rhay, 389 U. S. 128, 135).
While Menechino is limited in its direct consideration to the question of parole, the spirit and reasoning of the decision are sufficient to guide this court on the issues in question. This court is cognizant and supportive of the sage remarks of Judge Breitel who dissented in Menechino (supra, p. 393). Judge Breitel warned that ‘ ‘ as steps are taken in any novel direction it frequently becomes increasingly difficult to mark the instant gap before the next step, only because another gap was bridged earlier. The process becomes endless and the logic is not that of rational compulsion but the dialectic piecemeal erosion of distinction.”
The revocation of parole and the revocation of aftercare status are, however, almost identical in their effects on those aggrieved. In both cases, revocation proceedings will ultimately decide an individual’s right to continue at liberty or be confined.
The affidavit of the Director of Hasten Park Rehabilitation Center gives an extensive account of the procedure for granting *225 aftercare status; however, the affidavit is completely devoid of any procedural information for revocation of aftercare status.
On page unnumbered 11 of his affidavit he states: “ On the case of Mr. V. Young, for date relative to his return to intramural status please refer to: 1. Report of Delinquency of 04/19/72. This is one of many delinquency reports in this man’s history in which he has been charged with failure to report and other infractions (drugs use, criminal activity).”
Nowhere in the affidavit is there any evidence that the petitioners were given notice of the alleged charges causing the revocation of their aftercare status or that they were given an opportunity to be heard on the charges.
The respondent contends that the Legislature has vested the commission with “ power to order any narcotic addict from aftercare supervision to in-patient treatment ” and further that no rule or regulation is required to be issued by the commission setting forth any specific mode and means for returning such addicts to aftercare custody. The courts have held otherwise.
An agency must show information upon which it relied in reaching its decision. It must explain the course of reasoning by which the result was reached. When an agency’s determination is challenged upon the grounds of disputed issues of fact, the agency must be able to point to a procedure giving the individual affected, a fair opportunity to challenge the determination. None exists in the instant case.
Further, the State’s obligations under the Fourteenth Amendment are not simply generalized ones; rather the State owes to each individual that which, in the light of values of a free society, can be characterized as due process. There can be no doubt that as a minimum requirement the deprivation of life, liberty and property by adjudication must be proceeded by notice and opportunity for a hearing appropriate to the nature of the case.
It is the holding of this court that an addict certified to NACO and on aftercare status is entitled to the constitutional protections of due process. Specifically, an addict cannot be returned to resident status by the commission without providing that individual with an opportunity to a hearing on the charges leading to revocation of his aftercare status. Further, the addict is entitled to be represented by counsel at said hearing.
The Narcotic Addiction Control Commission is hereby enjoined from further conduct inconsistent with this opinion and is directed to provide petitioner Young with a hearing at which he shall be entitled to the assistance of counsel.